St. L., I. M. & S. Ry. Co. vs. Yocum.

---

## St. L., I. M. & S. Ry. Co. vs. Yocum.

1. SUMMONS: *Judgment by default, on good service and bad return of.*
   Where a summons has been, *in fact,* duly served, the defendant must take notice of it, unless all defense be waived. He can not shelter himself under a defective *return,* from the consequences of his default, if the true facts be at any time brought properly upon the record; which may be done by amendment, even after an appeal.

2. PAUPERS: *Suits by, without attorney's certificate of cause of action.*

It is too late, after judgment, to object that a complaint in *forma pauperis* was not accompanied with the certificate of an attorney, that, in his opinion, the plaintiff had cause of action. It affects the cost alone; not the merits of the action, nor jurisdiction of the court.

3. RAILROADS: *Negligence causing death of child.   Who may sue for.*

For damages for the death of a minor, killed by the running of a railroad train, the father, if living, must sue. If the mother sues she must show affirmatively and positively that the father is dead. The allegation that she is a widow, is not sufficient.

APPEAL from *Clay* Circuit Court.

Hon. L. L. MACK, Circuit Judge.

*Winfield*, for appellant.

*Crawford* (of St. Louis), *contra*.

EAKIN, J.   On the sixth of February, 1878, Catherine Yocum sued the appellant railroad company in Clay county, under the act of February 3, 1875, to recover damages for the death of her son.   She states: " That she is a citizen of the state of Missouri, that she is a widow, and that she was the mother of Morris Collins, who was her son by a former marriage," and who, on the fourteenth of February, 1877, was under the age of twenty years, and unmarried; that, on said last named date, he " was in the employ of the defendant as fireman of its passenger trains," and whilst discharging his duties as such, he was, without any carelessness or negligence on his part contributing thereto, but solely through the defective and misplaced track of said defendant, thrown under and instantly killed by the overturning of the car or cab of defendant, while said train was running south at a point" in the county of Pulaski.

Upon this complaint a summons was issued, which was returned by the sheriff, indorsed as follows:

"I served the within summons on the within named company, by delivering a true copy to Harry Clemmons, depot and managing agent of said company, at Corning, on the seventh day of February, 1878, at Clay county, Ark."

There was judgment by default for the sum of $5,000 as found by a jury impanneled to assess damages. The defendant prayed an appeal which was allowed by the clerk of this court.

Afterwards, on the twentieth of February, 1879, the circuit court of Clay county allowed the sheriff to make an amended return, showing that the copy of the summons had been delivered to Harry Clemmons, at the depot house of defendant, in the town of Corning, county of Clay, and that said Clemmons was there, the depot and managing agent of said company, and that "the president or other chief officer of said company are absent from Clay county."

This amendment is brought up by *certiorari*.

It has been the practice of this court to allow amendments of returns, to be made by leave of the circuit courts in accordance with the facts, even after an appeal. The act of February 3, 1875, which gives this action, prescribes that service shall be by copy of summons "on any agent of the railroad company sued, at any depot house in the county where the suit is brought." The first return fails to show with sufficient certainty that the copy of the summons was delivered at the depot house. This is cured by the amended return. Where a summons has been *in fact* duly served, it is the duty of the defendant to take notice of it, unless all defense be waived. He can not

shelter himself under a defective return from the conse-
quences of his default, if the true facts be at any time
brought properly upon the record. He could not, in the
action, question the truth of the return in either case, and
his remedy for a false return would be as effective in the
case of the amended as the original return.

The complainant sued as a non-resident *in forma pauperis*,
and failed to append to her petition for that purpose, the
certificate of an attorney of the court, of his opinion that
she had cause of action. This, if urged in the court
below, might have been good ground in abatement or for
a motion to dismiss the suit, on failure to file a bond for
costs, but can not affect the judgment rendered upon the
complaint by default. The question affects costs alone,
and not the merits of the action nor the jurisdiction of
the court.

But more serious objections are urged against the com-
plaint. It is contended that complainant shows no cause
of action in herself.

Section 3, of the act, provides: "Where the person
killed or wounded be a minor, the father, if living—if not,
then the mother ; if neither be living, then the guardian—
may sue for and recover such damages as the court or jury
trying the case may assess." This is a change of the
common law which, as was announced by this court in
the case of *L. R. and Fort Smith R. R. Co. v. Barker and
Wife*, gave no right of action for the death of a human
being. The right of action is not given by the first sec-
tion of the act, which makes the railroad liable for "all
damages to *persons and property;*" which was only a declar-
ation of the common law, and would not of itself include
damages for death. The remedy is novel and *sui generis*,
dictated by humanity and adapted to modern social neces-

sities. The benefits of the section can only be claimed by those who bring themselves within its provisions. In the case of a minor killed by the running of a train, the father, if living must sue. If the mother sues, she must show affirmatively and positively that the father is dead. Nothing short of that will answer. The complainant in this case shows that she is the mother of the minor who was killed; that his father was her former husband; that she was, at the time of bringing the action, a widow. It may be inferred that she married a man named Yocum, after having been the wife of the father of deceased, and that Yocum had died, leaving her a widow; but under our laws concerning divorce, it can not be logically inferred from a second marriage that the first husband is dead, or has lost his rights over the children of the marriage. Nor, if it could, would it follow that an allegation of widowhood, at the time of bringing the action, would be equivalent to an allegation of the death of the youth's father almost a year before, at the time of the accident. It might well be, from all that appears, that the father was then living, and had afterwards died, and the mother had married Yocum, who had died also before suit. In such case, no right of action would vest in the mother.

The remedy is purely statutory, and the right to it must be clearly shown. The complaint in this respect is fatally defective, and the judgment upon it erroneous.

It is further urged that no negligence is charged on the part of the company. Negligence is an essential element of liability for damages in all cases where corporations or individuals are pursuing a lawful business. Even where negligence may be presumed from acts or circumstances, and when the *onus* of exoneration may be on the defendant, it must, nevertheless, be considered in issue; and, as has

32

been held in Alabama, must be charged in the complaint. The laws for the protection of stock or persons can not impose an absolute liability upon railroads, regardless of all care and caution. It would be to destroy their business and infringe their charter rights. In the case of injuries by death of persons, it has ever been held, under the laws giving the new remedies, that it is essential to aver negligence.

The case of the *Little Rock and Fort Smith Railway Company v. Barker and wife* (*supra*) proceeded, and was argued by counsel on both sides, upon the just and true grounds, that negligence was an essential element of liability, without which there could be no cause of action. To say that the death was caused solely by accident "through the defective and misplaced track of defendant," is certainly a very vague and argumentative assertion of an important fact; that is to say, of negligence; inasmuch as that might consist with the utmost human caution on the part of the officers and agents of the company. Such an allegation might, and would doubtless, be cured by verdict, but whether or not by default, it is not necessary now to determine.

For the errors above pointed out, let the judgment be reversed, and the cause be remanded, for further proceedings in the circuit court, where pleadings may be amended and time given to answer, under the sound discretion of the court.